DEVIN DERHAM-BURK, # 104353
CHAPTER 13 STANDING TRUSTEE
DEVIN L. PACE, ESQ. #256514
NANETTE DUMAS, ESQ. #148261
JANE Z. BOHRER, ESQ. #243692
P.O. BOX 50013
SAN JOSE, CA 95150-0013

TELEPHONE: (408) 354-4413
FACSIMILE: (408) 354-5513

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA - DIVISION 5

| | |
|---|---|
| IN RE:<br>CINDY YUN KONG IKEOKA,<br><br>Debtor. | CASE NO. 16-52802 HLB<br>CHAPTER 13<br><br>**MOTION BY CHAPTER 13 TRUSTEE TO DISMISS CASE WITH A BAR TO RE-FILING and MEMORANDUM IN SUPPORT THEREOF**<br><br>Hearing Date: February 1, 2017<br>Hearing Time: 11:00 a.m.<br>Judge: Hon. Hannah L. Blumenstiel<br>Place: 1000 S. Main St., Room 214<br>Salinas, CA 93901 |

Devin Derham-Burk, Standing Chapter 13 Trustee ("Trustee"), moves this Court for dismissal of this case for "cause" and to impose a one-year bar against debtor Cindy Ikeoka ("Debtor") prohibiting her from re-filing another bankruptcy case for a period of one year. ("Motion"). Debtor filed this Chapter 13 case even though she knew or should have known that

she has debts exceeding the statutory limits to qualify for Chapter 13 relief. *See* 11 U.S.C. §109(e). On her Schedules, Debtor substantially under-reported the amount of her outstanding secured debt related to a loan that she obtained to purchase her home located at 548 Aguajito Road, Carmel, California ("Residence"), thereby disguising her lack of eligibility. Cause for dismissal exists based on Debtor's ineligibility for chapter 13 relief and on her bad faith in preparing her bankruptcy schedules. 11 U.S.C. §§ 105, 109(e) and 1307(c).

In support of the Motion, the Trustee submits the following memorandum of points and authorities. The Trustee further requests that the Court take judicial notice of its own records in this case, as well as the court's records in Debtor's prior bankruptcy cases that are discussed herein.[1] Judicial notice of the court's records is appropriate pursuant to Fed. R. Evid. 201 made applicable to bankruptcy proceedings pursuant to Fed. R. Bankr. P. 9017.

This motion is brought in accordance with Federal Rules of Bankruptcy Procedure 9013, 9014 and Bankruptcy Local Rule 9014-1.

## FACTUAL BACKGROUND

In 2004, Debtor borrowed $1,470,000.00 from Chevy Chase Bank, F.S.B. ("CCB" and/or "CCB loan") to purchase the Residence. *See* Claims Register, Claim No. 2-1, Exhibit pp. 1-7. The CCB loan is secured by a deed of trust against the Residence in favor of CCB. *Id*. at pp. 8-31. Debtor has not made any CCB loan payments since November 2008, just over eight years ago. *Id*., Main Doc. p. 5.

---

[1] Unless otherwise indicated, all references to the Court's electronic docket or claims register refer to the Court's record in the instant case.

This is Debtor's fifth bankruptcy case in less than seven years. The first three cases, which were pending between February 2010 and December 2011, were all dismissed for failure to make plan payments or to file required documents.[2] Approximately two years after the last of those three cases ended, Debtor filed her fourth case on November 8, 2013. *See* Case No. 13-55904 MEH.

Debtor filed all four of her prior cases via skeleton petitions. The Court dismissed the first and third cases within sixty days of their filing because Debtor failed to file her Schedules and other bankruptcy paperwork. [Case No. 10-50979, Docket #9 and Case No. 11-60855, Docket # 10]. Of those first three cases, Debtor only filed bankruptcy Schedules in her second case. [Case No. 10-53485, Docket #11, p. 3]. On Schedule A, Debtor represented that she owned two parcels of real property – the Residence and another property located in Marina, California. *Id*. In an apparent inconsistency, she listed the Residence's fair market value as $650,000.00 on Schedule A and as $800,000.00 on Schedule D. [Case No. 10-53485, Docket #11, p. 3 and 8]. But, both Schedule A and D reflect that, as of April 2010, the debt against the Residence was $1,650,000.00. *Id*. Debtor scheduled the property in Marina, California, with a fair market value of $320,000.00 and debt of $334,000.00. *Id*.

When Debtor eventually filed Schedules in her fourth case, she reported starkly different debt levels related to both the Residence and the Marina property. She continued to value the Residence at $800,000.00 as of November 2013, but she reported a vastly reduced amount of debt against secured by the Residence – only $190,000.00 – almost $1.5 million less than she reported in 2010. [Case No. 13-55904, Docket #34, pp. 3 and 8]. She also scheduled less debt secured by the Marina property – just $80,000.00 rather than the earlier reported $334,000.00.

---

[2] *See* Case Nos. 10-50979-MM, 10-53485-CN and 11-60855-CN.

*Id*. U.S. Bank, which by this time held the note associated with the CCB loan, quickly moved for relief from the automatic stay and objected to confirmation of Debtor's proposed plan, relying in part on the fact that the actual amount owed with respect to the CCB loan was $1,953,931.91, not $190,000.00. [Case No. 13-55904, Docket #47 and #48]. The Court (Hon. Charles Novack) granted U.S. Bank relief from stay on May 23, 2014. [Case No. 13-55904, Docket #61].

With assistance of an attorney named Michael Yesk ("Counsel"), Debtor appealed from the Court's order granting U.S. Bank relief from the automatic stay. [Case No. 13-55904, Docket #71]. However, Debtor did little to nothing to advance her bankruptcy case toward confirmation. After several months of inactivity, the court (Hon. Elaine Hammond) issued an order requiring Debtor to appear on December 19, 2014 and show cause why the bankruptcy case should not be dismissed ("OSC"). [Case No. 13-55904, Docket #89]. On December 5, 2014, Counsel filed timely written response to the OSC stating that he had just substituted in on Debtor's behalf at the time of Debtor's appeal[3] and that, going forward, he would advance the case in a timely fashion. [Case No. 13-55904, Docket #90].

At the December 19, 2014 OSC hearing, the issue of Debtor's ineligibility for chapter 13 relief was raised, and the Court set a January 9, 2015 deadline for Debtor to file a request to either convert or dismiss her chapter 13 case. [Case No. 13-55904, Docket Minute Entry dated 12/19/14]. On January 9, 2015, Counsel filed a motion to convert Debtor's case to Chapter 11. [Case No. 13-55904, Docket #94]. In the motion to convert, Debtor specifically acknowledges that:

---

[3] According to the Court's docket in Case No. 13-55904, no formal substitution of counsel was ever filed.

> Debtor filed the [fourth] case in pro per, and did not understand that she did not qualify for Chapter 13. She has now hired counsel and counsel understands that this case should have been filed as a Chapter 11 case.

[Case No. 13-55904, Docket #94, p. 2]. The Court granted Debtor's motion to convert at a hearing held on February 13, 2015. [Case No. 13-55904, Docket Minute Entry dated 2/13/15]. The written order converting the case was entered on April 30, 2015. [Case No. 13-55904, Docket #97].

In early June 2015, Debtor moved to voluntarily dismiss her fourth case that had been converted to Chapter 11 because the secured lender's rights associated with the CCB loan could not be modified via bankruptcy as the debt was secured by a first priority lien against Debtor's primary residence. Debtor's motion papers expressly acknowledge that the then current debt against the Residence was approximately $1,953,931.91. [Case No. 13-55904, Docket #110, p. 2].

While the motion to dismiss was pending, the bankruptcy appellate panel issued a decision upholding the relief from stay order that the bankruptcy court had entered related to the Residence. [Case No. 13-55904, Docket #115]. It is worth noting that as part of its decision, the appellate panel expressly recognized that Debtor's Schedules were "underinclusive of secured creditors" in that Debtor had reported the debt associated with the CCB loan as $190,000.00 while the proof of claim evidenced actual debt of $1,953,931.91. [Case No. 13-55904, Docket #115, pp. 2-3]. Two weeks later, on July 13, 2015, the bankruptcy court granted Debtor's motion to dismiss her fourth case. [Case No. 13-55904, Docket #119].

On September 29, 2016, Debtor filed the instant case via a skeleton petition and without assistance of counsel. [Docket # 1]. Debtor once again seeks bankruptcy protection pursuant to chapter 13, even though she 1) has made no payments on the CCB loan since 2008; 2)

previously acknowledged that, as of June 2015, the debt against the Residence was approximately $1.9 million; and, 3) asked to convert her immediately preceding case to chapter 11 because her debt levels prevented her from qualifying for chapter 13 relief.

Like Debtor's 2013 case, Debtor's Schedules in this current case vastly under-report the debt associated with the CCB loan, again scheduling it at $190,000.00. [Docket #15, p. 14]. The proof of claim regarding the CCB loan, by contrast, demonstrates that Debtor has done nothing to pay down the debt against the Residence since her last case and that the outstanding debt, as of the petition date, had grown to $2,235,871.42. *See* Claims Register, Claim No. 2-1.

## LEGAL ARGUMENT

**A. There is Cause to Dismiss this Case Based on Debtors' Lack of Eligibility.**

Chapter 13 of the Bankruptcy Code is intended to provide a reorganization remedy for individual consumers and proprietors who have a relatively small amount of debt. *Johnson v. Home State Bank*, 501 U.S. 78, 82, 111 S. Ct. 2150, 2153 (1991). As a result, individuals seeking relief under chapter 13 must meet certain eligibility criteria. As in effect on the petition date in this case, § 109(e) of the Bankruptcy Code restricts eligibility for chapter 13 debt relief to individuals with regular income that owe

> on the date of filing of the petition, noncontingent, liquidated, unsecured debts of less than $394,725 and noncontingent, liquidated, secured debts of less than $1,184,200.

11 U.S.C. § 109(e).[4] When Debtor filed her petition, she owed secured debt exceeding $2.2 million, well in excess of the statutory limit. As a result, she is not eligible to be a chapter 13 debtor.

---

[4] The amounts reflected in the quote reflect the § 109(e) debt limits in effect during September 2016, the month in which Debtor filed the instant bankruptcy petition. The debt limits are subject to periodic adjustment as provided in § 104 of the Bankruptcy Code and were recently increased to the indicated amounts effective April 1, 2016.

*1. This Court should look beyond Debtor's schedules to determine Debtor's eligibility.*

Normally, eligibility under § 109(e) is based on the amount of debt reflected on a debtor's originally filed schedules, checking only to see if the schedules were prepared in good faith. *Scovis v. Henrichsen (In re Scovis)*, 249 F.3d 975, 982 (9th Cir. 2001). Nevertheless, it is well-accepted that *Scovis* states a general rule and that a debtor's schedules remain the starting point, not the end, of the court's eligibility inquiry. *See e.g., In re Lantzy*, 2010 WL 6259984 at *3 (B.A.P. 9th Cir. Dec. 7, 2010)(in light of good faith objection to eligibility, the court may look to other evidence); *In re Nichols*, 2007 WL 7541002 at *7 (B.A.P. 9th Cir. Jan. 3, 2007)(citing *Scovis* for the proposition that when there is a good faith objection to eligibility, the court should look past the schedules to other evidence submitted); *In re Guastella*, 341 B.R. 908, 918 (B.A.P. 9th Cir 2006)(schedules are starting point but not dispositive; court may make limited inquiry outside of schedules in face of good faith eligibility objection,); *In re Smith*, 419 B.R. 826, 829 (Bankr. C.D. Cal. 2009)(Tighe, J.)(courts "may look beyond the schedules if there are "allegations or indicia" that the schedules were not filled out in good faith"); *In re Smith*, 325 B.R. 498, 502 (Bankr. D.N.H. 2005)(Deasy, J.)(although schedules are the "beginning point" in determining eligibility, when it appears that a debtor did not exercise reasonable diligence or good faith in completing schedules, the court may look to other evidence). The recognition that scheduled debts should not be accepted at face value when challenged makes sense. As one bankruptcy appellate panel explained, "[i]f the debtors' schedules were dispositive, then eligibility could be created by improper or incomplete scheduling of creditors." *In re Quintana*, 107 B.R. 234, 238-39 n.6 (B.A.P. 9th Cir. (1989), *affd*, 915 F.2d 513 (9th Cir. 1990).

Often a court's inquiry goes beyond the schedules to include consideration of the proofs of claim on file. *See, e.g., In re De Jounghe*, 334 B.R. 760, 768 (B.A.P. 1st Cir. 2005)(proofs of claim considered where debtor's effort to amend schedules constituted an admission that the original schedules were incorrect); *In re De La Hoz*, 451 B.R. 192, 202 (Bankr. M.D. Fla. 2011)(proofs of claim considered where virtually all scheduled claims were designated as contingent or unliquidated); *Smith*, 325 B.R at 503 (IRS proof of claim considered because Debtor could not possibly have exercised reasonable diligence where Debtor failed to schedule the IRS as a creditor even though Debtor had not filed tax returns for the 4 years preceding his petition and, therefore, must have known that the IRS had a claim).

Here, the Trustee appropriately, and in good faith, has challenged Debtor's eligibility to proceed with this chapter 13 case. The Court can, and should, look beyond Debtor's schedules and consider the readily available evidence regarding Debtor's real secured debt totals as of the petition date. That evidence includes 1) a proof of claim in this case indicating that Debtor now owes $2,235,871.42 with respect to the CCB loan and that Debtor has made no payments on the loan since November 2008; 2) Debtor's own schedules in her second bankruptcy case acknowledging that as of 2010 the debt associated with the CCB loan was approximately $1,650,000.00; 3) Debtor's motion to convert her immediately preceding case to Chapter 11 because Debtor's debt levels made her ineligible for chapter 13 relief; and, 4) Debtor's motion to dismiss her immediately preceding case which expressly acknowledges that, as of June 2015, the debt against the Residence exceeded $1.9 million.

2. *Properly Calculated, Debtor Has Debt Well in Excess of the Limits Set Forth in § 109(e)*.

Considering both the filed proof of claim regarding the CCB loan and Debtor's schedules, it is readily apparent that Debtor's secured debt is not $270,000.00 as scheduled. Rather, the Trustee calculates that Debtor's secured debt, at a minimum, is as follows:

| Claim No. | Claimant | POC Amount (if none, then scheduled amount) |
|---|---|---|
| 2 | CCB (US Bank as Trustee) 1ST DOT against the Residence | $2,235,871.42 |
| None | HSBC 1st DOT against the Marina, CA property | $80,000.00 |
| | **TOTAL SECURED DEBT** | **$2,315,871.42** |

Because Debtor's *secured* debt exceeds the $1,184,200 limit set forth in § 109(e), this case should be dismissed for failure to satisfy the Bankruptcy Code's *secured* debt limits with respect to eligibility for Chapter 13 relief.

### B. There is Cause to Dismiss this Case Based on Bad Faith.

Bankruptcy Code § 1307(c) provides that a court may dismiss a chapter 13 case for cause if dismissal is in the best interests of the creditors and the estate. "Cause" includes, but is not limited to, the eleven enumerated grounds set forth in subsection (c). While bad faith is not one of the enumerated grounds, the Ninth Circuit has repeatedly held that bad faith in filing a chapter 13 case constitutes cause for dismissal. *In re Padilla*, 222 F.3d 1184, 1192-93 (9th Cir. 2000) ("[W]e have held that bad faith does provide 'cause' to dismiss . . . Chapter 13 bankruptcy petitions."), *citing*, *In re Leavitt*, 171 F.3d 1219, 1224 (9th Cir. 1999) ("Although not specifically listed, bad faith is a 'cause' for dismissal under § 1307(c)."), *and, In re Eisen*, 14 F.3d 469, 470

(9th Cir. 1994) ("A Chapter 13 petition filed in bad faith may be dismissed 'for cause' pursuant to 11 U.S.C. 1307(c).").

To determine whether a debtor has acted in bad faith, the Court must look to the "totality of the circumstances." *Leavitt*, 171 F.3d at 1224. This includes consideration of: 1) whether the debtor misrepresented facts in the petition or plan, unfairly manipulated the Code, or otherwise filed the petition or plan in an inequitable manner; 2) the debtor's history of filings and dismissals; 3) whether the debtor only intended to defeat state court litigation; and 4) whether egregious behavior is present. *Id*. *See also Walker v. Stanley*, 231 B.R. 343, 348-49 (N.D. Cal. 1999). Neither malice nor actual fraud is required for a finding of bad faith. *Leavitt*, 171 F.3d at 1224-25.

While the Bankruptcy Code does not prohibit repeat bankruptcy filings, in appropriate circumstances, such conduct may evidence bad faith. *Walker*, 231 B.R. at 348, *citing*, *Tsafaroff v. Taylor*, 884 F.2d 478 (9th Cir. 1989). Serial cases using skeletal, incomplete filings or where debtors have repeatedly failed to perform their duties or where circumstances appear largely unchanged have all been found to be indicative of bad faith. *See Walker*, 231 B.R. at 348-49; *In re Stober*, 193 B.R. 5, 10-11 (Bankr. D. Ariz. 1996).

Applying the *Leavitt* factors to this case, the evidence establishes that Debtor has filed this case in bad faith. First, as discussed above, Debtor is not eligible for Chapter 13 relief and Debtor's filings in her immediately preceding case demonstrate that Debtor is aware that she does not qualify for Chapter 13 relief. Despite that knowledge, she filed this case and inaccurately reported that her total secured debt was well below the Chapter 13 secured debt limits. Debtor's attempt to disguise her lack of eligibility is a blatant manipulation of the bankruptcy system and is just the type of egregious behavior that warrants a finding of bad faith.

Even if Debtor was eligible for chapter 13 relief, nothing about this current case suggests that Debtor's circumstances have changed or that Debtor will prosecute this case more successfully than her four prior cases. To the contrary, Debtor initiated this current case, as she did each of her prior cases, with a skeleton petition. After four prior bankruptcy cases, Debtor's use of a skeleton petition in this current case is more indicative of an intent to further delay the proceedings than an intent to prosecute the case. Debtor has managed to avoid providing complete and accurate information regarding her assets, liabilities, income and expenses over the course of five bankruptcy cases that have provided her with intermittent bankruptcy protection over the last six and a half years. The continued absence of complete or truthful information constitutes evidence of Debtor's bad faith.

Pursuant to § 105 of the Bankruptcy Code, this Court has the authority to prohibit the Debtor from re-filing another bankruptcy case for one year. Section 105(a) provides in pertinent part:

> The court may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title. . . shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to . . . prevent an abuse of process.

11 U.S.C. § 105(a). It has been widely recognized that this section empowers bankruptcy courts to sanction bad-faith serial filers by prohibiting new bankruptcy filings for periods exceeding the 180 days specified in § 109(g). *See In re Casse*, 198 F.3d 327, 337-38 (2d Cir. 1999)(collecting cases). Our own Ninth Circuit, in *In re Rainbow Magazine, Inc.*, 77 F.3d 278, 284 (9th Cir. 1996), recognized that in enacting § 105(a), Congress statutorily granted to bankruptcy courts the same inherent powers to sanction bad faith conduct that Article III courts enjoy. While the issue in *Rainbow Magazine* was whether the bankruptcy court had the authority to assess

IKEOKA 16-52802 HLB                                                                MOTION TO DISMISS 11 of 12

Case: 16-52802   Doc# 28   Filed: 12/14/16   Entered: 12/14/16 10:35:10   Page 11 of 12

monetary sanctions against bad faith litigants beyond the scope of rule 9011, the holding in the case is sufficiently broad to encompass any action that a bankruptcy court may take in maintaining the integrity of the system, so long as it is not specifically limited by statute. *Rainbow Magazine*, 77 F. 3d at 284-85, *citing, Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991).

Debtor's recurring use of skeleton petitions, her apparent knowledge that she is ineligible for Chapter 13 relief and her repeated attempts to disguise her lack of eligibility by under-reporting her secured debt, when taken together, constitute ample evidence of abuse of the bankruptcy system and provide sufficient cause for the Court to use its powers under § 105(a) to bar Debtor from re-filing any bankruptcy case for a one-year period going forward.

## CONCLUSION

WHEREFORE, for the reasons explained above, Devin Derham-Burk, the Standing Chapter 13 Trustee, asks the Court to dismiss this case for cause pursuant to 11 U.S.C. § 1307(c) due to Debtor's bad faith and ineligibility for Chapter 13 relief. The Trustee further asks the Court to bar Debtor from filing any new bankruptcy case for a one-year period going forward.

Dated: December 14, 2016 Respectfully submitted,


/s/ *Jane Z. Bohrer*
Attorney for Chapter 13 Standing Trustee